## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| James Carpenter, | Civil No. 15-120 (MJD/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Extendicare Health Services Inc., Texas Terrace Nursing Home, Jennifer Kuhn, Bernice Davis, Jane Does 1-3, and R.N. Kody, and John/Jane Doe, | |
| Defendants. | |

James Carpenter, pro se Plaintiff.

Jamie L. Jonassen, Esq., for the Defendants.

This case is before the Court, United States Magistrate Judge Jeffrey J. Keyes, on Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c). (Doc. No. 21).  The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  A hearing was held on October 8, 2015, at the U.S. Courthouse, 316 N. Robert St., St. Paul, Minnesota.  For the reasons discussed below, this Court recommends that Defendants' motion be granted.

## I.   BACKGROUND

Plaintiff commenced this action by complaint filed on January 29, 2015.

Defendant Texas Terrace Nursing Home ("Texas Terrace") is a long term care

nursing home owned and operated by Defendant Extendicare Health Services

Inc. ("Extendicare").  Plaintiff was a resident at Texas Terrace during times

pertinent to this action.  The individual defendants are employees at Texas

Terrace.   Plaintiff alleges that he was released from an Ohio state prison facility

on March 26, 2012, on a medical reprieve after his Ohio criminal case had been

remanded for re-sentencing.  He was placed in the custody of his brother, Bruce

Carpenter, where he lived in Minnesota and had substantial freedom of

movement.  Plaintiff was subsequently brought to Fairview Hospital and was later

moved to the Texas Terrace nursing home in St. Louis Park, Minnesota, where

he resided for several months.

Plaintiff contends in his complaint that Texas Terrace had been incorrectly

advised that there was an Ohio court order restricting him to the nursing home

facility.  He alleges that he is disabled with an implanted ventricular assistance

device and was initially given daily wound treatment which he was later denied.

Plaintiff also alleges that Texas Terrace made efforts to involuntarily remove him

from the facility and threatened to call police if he attempted to go outside or

leave the facility for worship services or community activities.  He states that

when he returned from temple outside the facilities he was threatened with denial

of medication; and police were once called to the nursing home after he merely

touched a nurse aide to get her attention.  Though no charges were pressed,

Defendant Kuhn, a Texas Terrace administrator, and Defendant Davis, a social

worker at Texas Terrace, reported that Plaintiff had assaulted the aide and

Plaintiff was no longer allowed to go to the garden area basement where he

could visit with other residents.  Defendant Kuhn thereafter made threats to have

Plaintiff sent back to Ohio, falsely stating that he had assaulted one of the

nurses, and she ordered him to leave the facility or be arrested for trespassing.

Finally, it is alleged that Kuhn wrote a letter to the Ohio court falsely indicating

that Plaintiff had assaulted a staff member and caused a lot of trouble while at

Texas Terrace, an action that resulted in his being sent back to prison.

## II.    CASE HISTORY AND CLAIMS

Plaintiff commenced this action in January 2015, while he was

incarcerated at an Ohio state prison (Doc. No. 2).  In April 2015, Plaintiff advised

the Court of a change of address to 5045 2nd Ave. So., Minneapolis, MN  55419

(Doc. No. 9).  An answer was timely filed on behalf of Defendants Extendicare,

Texas Terrace, and Jennifer Kuhn on May 8, 2015 (Doc. No. 13).  Summons was

returned unexecuted as to Defendant Bernice Davis (Doc. No. 16) and the court

docket contains no evidence of service on Defendant R.N. Kody or any Jane Doe

or John Doe defendants.  The parties were given Notice of Pretrial Conference to

take place on August 7, 2015, with instructions to meet prior to the pretrial

conference and jointly prepare a Rule 26(f) report to be filed with the Court (Doc.

No. 19).  Defendants submitted a Rule 26(f) report on their own behalf on

August 4, 2015, providing required case management information and stating

that they had made multiple unsuccessful attempts to contact the Plaintiff by
mail.  The Notice of Pretrial Conference that was sent to the Plaintiff was not
returned to the Court.  The pretrial conference was held as scheduled on August
7, 2015.  Counsel for Defendants attended the conference.  Plaintiff did not.  A
Pretrial Scheduling Order was issued on August 7, 2015, acknowledging
Defendants' intent to file a Rule 12 motion to dismiss and deferring case
scheduling pending a decision on the motion to dismiss (Doc. No. 29).  The
Pretrial Scheduling Order was mailed to the Plaintiff at the address he provided
and the Order was not returned to the Court as undelivered.  Defendants filed
their motion to dismiss on August 7, 2015, as anticipated.  A Certificate of
Service was filed indicating that Plaintiff was served the motion to dismiss and
supporting documents by mail to Plaintiff's designated court file address, as well
as an alternative address (Doc. No. 27).[1]  An amended Notice of Hearing was
also sent by the Defendants to both addresses (Doc. No. 31), and a later docket
entry rescheduling the motion date from October 9, 2015 to October 8, 2015 was
mailed to the Plaintiff's file address by the Court (Doc. No. 32).  The mailed
hearing notices and motion papers were not returned to the Defendants and the
amended notice of hearing was not returned to the Court.  Plaintiff did not file a

_____

[1]     The alternative address is: James Carpenter, 14016 Chestnut Drive, #3,
Eden Prairie, Minnesota  55347-1644.

memorandum or any supporting documents in opposition to the motion to

dismiss.  Defendants submitted a letter to the Court on September 24, 2015,

reciting their unsuccessful efforts to contact the Plaintiff at several stages of the

litigation and requesting dismissal for lack of prosecution along with reasons

stated in their motion to dismiss (Doc. No. 33).  A hearing on the motion was held

on October 8, 2015, and there was no appearance by the Plaintiff (Doc. No. 34).[2]

  **Complaint Claims and Motion to Dismiss.**  Plaintiff's complaint provides

a factual statement as to for his twelve separate causes of action as recited

above.  The asserted causes of action are:

  (1)  Count One alleging retaliation against the Plaintiff for voicing

complaints and seeking court intervention for constitutional deprivations;

  (2)  Count Two alleging First and Fourteenth Amendment violations with

respect to Plaintiff's right to free exercise of his religion;

  (3)  Count Three alleging deprivation of Plaintiff's religious rights and equal

protection under the Minnesota Constitution;

---

[2] At the hearing Defendants' counsel advised the Court that during the previous evening her office had received a terse voice mail message in which a female caller stated that Plaintiff was in the hospital and would like to respond to the motion to dismiss.  The day following the hearing a person representing that he was the Plaintiff called chambers to state that he opposed the motion to dismiss.  He was instructed that any communication as to his position on the matter should be submitted in writing.  No further communication was received.

(4)   Count Four alleging negligence and breach of duty with respect to medical treatment;

(5)   Count Five alleging loss of consortium;

(6)   Count Six alleging libel in Defendants' communication with the Ohio state court;

(7)   Count Seven alleging slander by falsely informing law enforcement officials of nonexistent court orders;

(8)   Count Eight alleging defamation by Defendants' representations of Plaintiff as having committed offenses that did not occur;

(9)   Count Nine alleging harassment;

(10)   Count Ten alleging a Fourth Amendment violation for unlawful restraint by preventing him from leaving the facility;

(11)   Count Eleven alleging negligence in the provision of medical treatment; and

(12)   Count Twelve alleging emotional distress resulting in psychological injuries and mental anguish.

Defendants now move to dismiss this action on grounds that disputes are subject to an arbitration provision in an agreement executed by the Plaintiff when he was admitted to the Texas Terrace facility.  Defendants also assert that only Texas Terrace, Extendicare, and Jennifer Kuhn have been served and all other defendants are properly dismissed for failure to accomplish service on those

parties.  As to the individual causes of action, Defendants move to dismiss constitutional claims under 42 U.S.C. § 1983 because they are not state actors; Plaintiff has no private right of action for a claim under the Minnesota Constitution; Plaintiff is not married and therefore has no claim for loss of consortium; negligence claims are not established by a required affidavit of expert review and are not supported by necessary facts; libel and defamation claim are barred by absolute immunity or truth defenses; there is no cause of action for harassment recognized in Minnesota; and the emotional distress claim is not plausibly alleged.  Finally, Defendants argue that the case should be dismissed for failure to prosecute.

## III.   STANDARD OF REVIEW

To survive a motion to dismiss on the pleadings,[3] a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In applying this standard, the court must take all of the plaintiff's factual allegations as true, and grant every reasonable inference in favor of the plaintiff.  *See Braden v. Wal-Mart Stores,*

---

[3]    Defendants brought this motion to dismiss under Fed. R. Civ. P. 12(c), motion for judgment on the pleadings.  A motion for judgment on the pleadings is reviewed in essentially the same manner as motion under Rule 12(b)(6), failure to state a claim upon which relief can be granted.

*Inc.*, 588 F.3d 585, 594 (8th Cir. 2009); *Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1060 (8th Cir. 2006).  A party facing a motion to dismiss need not present evidence because the inquiry is not whether the plaintiff will ultimately succeed, but whether it has adequately asserted facts to support its claims.  *See Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012).

This plausibility standard "requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'"  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## IV.   ANALYSIS

### A.   Arbitration

In connection with his admission at Texas Terrace in July 2012, Plaintiff signed an Alternative Dispute Resolution Agreement ("ADR Agreement").  (Doc. 13-1; Ans., Ex. A.)  The ADR Agreement states that "[t]he Parties voluntarily agree that any disputes covered by this Agreement . . . that may arise between the Parties shall be resolved exclusively by an [Alternative Dispute Resolution] process that shall include mediation and, where mediation does not successfully resolve the dispute, binding arbitration."  (*Id.* at ¶3.)  The ADR Agreement "applies to any and all disputes arising out of or in any way relating to this

Agreement or to the Resident's stay at the [Texas Terrace Care] Center." (*Id.* at ¶4.)  The ADR Agreement expressly applies to claims alleging "violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; fraud; misrepresentation; negligence; gross negligence; malpractice . . ." (*Id.*)

Plaintiff commenced this action by complaint filed on January 20, 2015. He was advised of the ADR Agreement provision for arbitration and encouraged to respond and discuss the matter through correspondence from Defendants' counsel dated April 27, 2015 (Doc. No. 26-2; Jonassen Aff., Ex. 5), May 8, 2015 (*Id.*, Ex. 6), May 27, 2015 (*Id.*, Ex. 7), and June 8, 2015 (*Id.*, Ex. 8).  Plaintiff did not respond to the correspondence.  The ADR Agreement specifies that the Federal Arbitration Act ("FAA") (9 U.S.C. Sections 1-16) shall apply to the Agreement and all arbitration proceedings arising out of the Agreement.  (Ans., Ex. A at ¶5.)  Federal policy emphatically favors arbitration, *Marmet Health Care Center, Inc. v. Brown*, 132 S.Ct. 1201, 1203 (2012), and the FAA "requires courts to enforce the bargain of the parties to arbitrate." *Id.*, (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).  The court merely determines whether a valid agreement to arbitrate exists and whether the dispute is covered by the arbitration agreement, bearing in mind a "liberal federal policy favoring arbitration agreements." *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001) (citations omitted).

Defendants have put forth the ADR Agreement, executed by the Plaintiff, which states an enforceable agreement to arbitrate, and all of the counts asserted in the complaint are claims covered by the arbitration agreement. Plaintiff offers no evidence to establish a genuine dispute as the existence or enforceability of the arbitration requirement, and has not responded to Defendant's affirmative efforts to compel arbitration.  This Court concludes that there is no basis on which to invalidate or decline to enforce the arbitration agreement.  Defendants' motion to dismiss this case based upon the ADR Agreement for arbitration should be granted.

### B.    Alternative Bases for Dismissal

In addition to the requirement for arbitration under the ADR agreement which warrants dismissal of this action, Defendants assert procedural defenses and defenses on the merits that justify dismissal of defendants and claims for reasons in addition to the arbitration provision for reasons described below.  If this case is not dismissed for failure to arbitrate, then the following discussion provides alternative grounds on which this Court recommends dismissal.

1.    **Service of Process.**  Defendants contend that certain parties named in this action, Kathleen Davis and R.N. Kody, have never been served and more than 120 days have passed since the action was commenced on January 20, 2015.  Defendants assert that those parties should therefore be dismissed pursuant to Fed. R. Civ. P. 4(m).  The court docket indicates that

Marshal service forms were submitted for Defendants Extendicare, Texas Terrace, Kathleen Davis and Jennifer Kuhn only, and summons were issued for those parties. (Doc. No. 8.)  Summons were returned executed as to Defendants Extendicare, Texas Terrace, and Jennifer Kuhn, and unexecuted as to Kathleen Davis, on June 3, 2015.  (Doc. Nos. 15 and 16.)  The process return for Kathleen Davis stated that service was attempted on her on April 20, 2015, but she was no longer employed at Texas Terrace, the location designated for service.  The docket indicates that Marshal service forms were not submitted for R.N. Kody or Jane and John Doe defendants, and there is no evidence of any effort to accomplish service on those parties.  Also, there is no evidence of any further effort to serve Kathleen Davis.[4]

Fed. R. Civ. P. 4(m) provides that if a defendant is not served within 120 days after the complaint is filed, the court, on motion or on its own after notice to the plaintiff, must dismiss the action without prejudice against that defendant or order that service be made within a specific time, though the time for service may be extended on a showing of good cause for failure to make timely service. Plaintiff was a prisoner at the time he filed the complaint, and he applied to

---

[4]     An Answer was served and filed on behalf of Defendants Extendicare, Texas Terrace, and Jennifer Kuhn only (Doc. No. 13), though it was stated in the Answer that counsel would be representing other individual defendants if or when they are named and properly served.

proceed *in forma pauperis* ("IFP").  He was permitted to proceed upon payment of a partial filing fee.  (Doc. No. 5).  The initial fee was paid on February 23, 2015, and his IFP application was granted by Order dated February 25, 2015. This Order allowed Plaintiff 30 days to submit a completed Marshal Service Form (USM-285) for each defendant, failing which would result in a recommendation for dismissal without prejudice.

Plaintiff has never submit completed USM-285 forms for R.N. Kody or Jane and John Does defendants, and the complaint is properly dismissed without prejudice as to those parties pursuant to this Court's Order for timely submission of Marshal service forms, as well as failure to make timely service under Rule 4(m).  Also, more than 120 days have passed since the unsuccessful attempt to serve Kathleen Davis on April 20, 2015, and Plaintiff has made no additional effort to make service on her and has not requested additional time to make such service.  If this suit is not dismissed in its entirety, claims against Kathleen Davis, R.N. Kody, and Jane and John Doe defendants should be dismissed without prejudice for failure to accomplish timely service of process.

2.  **Claims under 42 U.S.C. § 1983.**  Count I of the complaint alleges constitutional deprivations based on retaliation against the Plaintiff for voicing complaints and seeking court intervention; Count II of the complaint alleges First and Fourteenth Amendment violations with respect to Plaintiff's right to free exercise of his religion; and Count X alleges a Fourth Amendment violation for

12

unlawful restraint by preventing Plaintiff from leaving the Texas Terrace facility.

Defendants contend that are not state actors against whom a § 1983 action for

constitutional violations can be asserted, and Counts I, II, and X must therefore

be dismissed.

The complaint in this case begins with the announcement that this is an

action for damages under 42 U.S.C. § 1983 and the United States Constitution.

Counts II and X of the complaint expressly allege constitutional violations, and

the Count I claim alleges retaliation in the form of denial of medical care,

defamation, unlawful restraint, denial of religious freedoms, and false police

reports, claims often alleged under § 1983.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the

violation of a right secured by the Constitution and laws of the United States and

must show that the alleged violation was committed by a person acting under

color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).  To act under color of

state law the defendant must have exercised power "possessed by virtue of state

law and made possible only because the wrongdoer is clothed with the authority

of state law." *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326

(1941)).  Merely private conduct, regardless of whether it is discriminatory or

wrongful, is not conduct under color of state law and is not actionable under

§1983.  *See Americans United for Separation of Church and State v. Prison

Fellowship Ministries, Inc.*, 509 F.3d 406, 422 (8th Cir. 2007).  Plaintiff has not

set forth a plausible claim that any defendant in this action is a state actor against whom a suit for constitutional violations can be maintained under § 1983, and Counts I, II, and X should be dismissed with prejudice for that reason.

3.     **Minnesota Constitution.**  Count III of the complaint alleges that Defendants deprived the Plaintiff of his right to free exercise of religion and his right to equal protection of the laws as secured by the Minnesota Constitution. There is no recognized private cause of action for violations of the Minnesota Constitution.  *See State v. Beecroft*, 813 N.W.2d 814, 837 (Minn. 2012); *see also Danforth v. Eling,* 2010 WL 4068791 at *6 (Minn. Ct. App. Oct. 19, 2010) (unpublished opinion) (citing *Guite v. Wright*, 976 F. Supp. 866, 871 (D. Minn. 1997), *aff'd on other grounds*, 147 F.3d 747 (8th Cir. 1998); *Mlnarik v. City of Minnetrista,* 2010 WL 346402 at *1 (Minn. Ct. App. Feb. 2, 2010).   Count III should be dismissed.

4.     **Negligence.**  Counts IV and XI generally assert negligence in regard to providing medical services and care, without reference to specific facts.  In the fact statement in the complaint the sole medical allegations relate to treatment for a wound (Doc. No. 1; Compl., ¶¶ 31-33), and refusal to provide medications (*Id.*, ¶¶ 46-49).  Defendants move to dismiss these counts on grounds that Plaintiff has not served the affidavit of expert review that is required under Minn. Stat. §145.682, subd. 2 and 3.  This statute states that in a medical care case a plaintiff must serve an affidavit stating that "the facts of the case have been

reviewed by the plaintiff's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff . . . ." *Id.*, subd. 3(a).  The affidavit requirement also applies to a pro se plaintiff.  *Id.*, subd. 5.  Noncompliance with the expert affidavit requirement within sixty days of a demand for such affidavit "results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case."  *Id.*, subd. 6(a).  Expert testimony is required when a determination of causation and damages would rest on technical medical concepts.  *Paulos v. Johnson*, 502 N.W.2d 397, 400 (Minn. Ct. App. 1993).

Plaintiff has made general allegations of injury, pain and suffering, and emotional and psychological trauma resulting from Defendants' failure to provide medical care.  (Compl., ¶¶ 83-90. 108-113.)  Typically, such allegations would require medical expert testimony to establish the standard of medical care, any failure to meet the standard of care, and damages.  The affidavit required under Minn. Stat. § 145.682 was not served with the summons and complaint and was not produced after Defendants sent a letter to the Plaintiff demanding that he provide the necessary affidavit of expert review within sixty days.  (Jonassen Aff., Ex. 7.)  Also, Plaintiff has provided no explanation as to why he has not provided an affidavit of expert review or why such an affidavit would not be necessary in

this case.  Under these circumstances, the medical negligence claims asserted in Counts IV and XI should be dismissed with prejudice.

In any event, Plaintiff's negligence claims fall far short of meeting the *Twombly/Iqbal* plausibility standard.  A negligence claim requires a showing of a duty of care, a breach of the duty of care, injury, and causation.  *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995).  Lack of proof on any essential element is grounds for dismissal.  *Id*.  Also, damages is an essential element, without which the negligence claim fails.  *Coney v. Union Pacific R.R.*, 136 F.3d 1195, 1197 (8th Cir. 1998).  Here, Plaintiff has made only general conclusory allegations of injury, pain and suffering, and emotional and psychological trauma, and he has provided no facts whatsoever to support those claims.  Indeed, the complaint acknowledges that Plaintiff actually received the wound treatment and medications that he contends were denied, and he offers no concrete evidence of actual injury or damages relating to those incidents.  Plaintiff's Count IV and XI negligence claims should be dismissed for this reason as well.

5.  **Loss of Consortium.**  Plaintiff alleges a loss of consortium claim based upon the failure of his relationship with a woman to whom he was engaged to be married.  A consortium claim relates to the marital relationship and applies only to a loss of comfort and companionship suffered by a married person.  *Lefto v. Hoggsbreath Enterprises, Inc.*, 567 N.W. 2d 746, 750 (Minn. Ct.

16

App. 1997).  Plaintiff was not married and therefore a loss of consortium claim

cannot exist.  Count V should be dismissed with prejudice on the merits.

　　　　6.　　**Libel and defamation claims.**  In Count VI Plaintiff alleges that

Defendants committed libel by writing false and unsupported allegations to the

sentencing judge in his Ohio criminal action, and in Count VIII Plaintiff alleges

that Defendants defamed his character by portraying him as having committed

offenses that never occurred, thereby adversely influencing the sentencing judge.

The written communications from Defendants to the Ohio court were provided in

accordance with an Order by the sentencing judge that expressly required Texas

Terrace to provide all treatment notes and records, as well as nursing notes and

incident reports involving the Defendant.  (Jonassen Aff., Ex. 3.)

　　　　The doctrine of absolute immunity protects a party from liability for

statements, even if defamatory, if the statement is made by a judge, attorney or

witness in a judicial or quasi-judicial proceeding, and the statement is relevant to

the subject matter of the litigation.  *Mahoney & Hagberg v. Newgard*, 729 N.W.2d

302, 306 (Minn. 2007).  Where absolute privilege applies, the speaker is shielded

from liability for even intentionally false or malicious statements.  *Id.*  The

privilege is intended to encourage witness dialogue without fear of civil liability.

*Id.* at 308.  Here, the Defendants' communications with the Ohio court were

made in a pending legal proceeding and were pertinent to the criminal action

based on the Ohio court order to produce medical records, nursing notes and

incident reports.  Defendants are entitled to absolute immunity from liability for alleged libel and defamation claims based on communications to the Ohio court. Counts VI and VIII should be dismissed with prejudice on merits.

7.   **Slander.**  Count VII alleges that Plaintiff was slandered as a result of Defendants falsely informing law enforcement officials of nonexistent court orders.  (Compl., ¶ 99).  The claim is based on Plaintiff's assertion that he had left the Texas Terrace facility to go to his synagogue and being informed on his return that Defendant Kody had called police and his attorney to advise them he had left the facility without a court order allowing him to leave.  (*Id.*, ¶ 99).

The Ohio court's Order allowing Plaintiff's temporary release from prison for medical purposes stated that Plaintiff was to reside with his brother in Minnesota, but that he would be permitted to reside "inpatient" at a medical institution if determined to be necessary for his medical condition and recovery. (Jonassen Aff., Ex. 2.)  A requirement that Plaintiff remain at the Texas Terrace facility was based on an actual court order, and information provided to police regarding the existence of a court order addressing such a requirement was not false.  Truth is an absolute defense to a defamation claim.  *Moor v. Hoff*, 821 N.W.2d 591, 596 (Minn. Ct. App. 2012).   As a matter of law, Plaintiff was not slandered by statements made to law enforcement regarding his in-patient status.  Count VII should be dismissed with prejudice.

8.     **Harassment.**  Plaintiff alleges a claim of harassment in Count IX, based on Defendants' acts, words or gestures intended to cause serious adverse effects on him.  (Compl., ¶ 104).  Minnesota law does not recognize an independent, common-law cause of action for harassment that is asserted in Count IX.  *Allen v. Bank of America Corp.*, 478 Fed. Appx. 341 (8th Cir. 2012).  In any event, the complaint states no facts to support such a claim.  Count IX should be dismissed with prejudice.

9.     **Emotional Distress.**  Count XII in the complaint alleges emotional distress with the claim that Defendants acted negligently, intentionally, or recklessly, and knew or should have known that their actions would result in serious emotional distress to the plaintiff.  (Compl., ¶ 116.)  A claim for negligent infliction of emotional distress requires demonstration of a duty owed to the plaintiff, breach of that duty, injury, and causation.   Also, the Plaintiff must show he was in a zone of danger of physical impact; he feared for his own safety; and he suffered severe emotional distress with physical manifestations.  *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 556 n.5 (Minn. 2003).  Careful review of the fact statement in the complaint reveals no facts to support an allegation or determination that Plaintiff was within a zone of danger of impact or that he suffered physical manifestations of severe emotional distress.

On a claim for intentional infliction of emotional distress the Plaintiff must show extreme and outrageous conduct that was intentional or reckless and

caused severe emotional distress.  *Hubbard v. United Press Int'l, Inc.*, 330

N.W.2d 428, 438-39 (Minn. 1983).  Extreme and outrageous conduct is

described as conduct that is "so atrocious that it passes the boundaries of

decency and is utterly intolerable to the civilized community."  *Langeslag v.*

*KYMN Inc.*, 664 N.W.2d 860, 865 (Minn. 2003).  Again, there are no facts stated

in the complaint that even approach the necessary showing of extreme and

outrageous conduct.  Indeed, the facts in the complaint do not even support the

underlying alleged claims of negligent failure to provide medical care, defamation

and slander relating to reports to law enforcement and the Ohio state court, or

attempting to involuntarily discharge the Plaintiff from the Texas Terrace facility.

10.   **Failure to prosecute.**  Finally, Defendants request dismissal of this

case with prejudice based on Plaintiff's failure to prosecute.  Rule 41(b) of the

Federal Rules of Civil Procedure provides that a district court may dismiss a case

for failure to prosecute a claim or comply with court orders.  *Rodgers v. Curators*

*of the Univ. of Missouri*, 135 F.3d 1216, 1219 (8th Cir. 1998).  However,

dismissal with prejudice is an extreme sanction to be used only in cases of willful

disobedience of a court order or persistent failure to prosecute.  *Id.* (citing *Givens*

*v. A.H. Robins, Inc.*, 751 F.2d 261, 263 (8th Cir. 1984).)

It is clear that the Plaintiff has not actively participated in this litigation

since filing the complaint and subsequently submitting his initial partial filing fee

as required by this Court to avoid summary dismissal.  (Doc. Nos. 4 and 5).  He

20

did not respond to the Court's Notice of Pretrial Conference (Doc. No. 19), did

not participate in the preparation of a Rule 26(f) report or submit a separate

report, and did not attend the pretrial conference or otherwise contact the Court

or Defendants in that regard (Doc. No. 25).  Also, Plaintiff did not respond to

Defendants' motion to dismiss and did not attend the hearing on the motion.

(Doc. No. 34).

The Eighth Circuit does not require that a litigant be given a warning that

he "is skating on thin ice" to avoid dismissal under Rule 41(b), but such a warning

is encouraged.  *Rodgers*, 135 F.3d at 1221.  It is this Court's determination that

dismissal for failure to prosecute under Rule 41(b) is premature and will not be

recommended at this time.  However, Plaintiff has certainly established a pattern

of non-compliance with Court orders, as well as failure to comply with rules of

civil procedure and Local Rules relating to motion practice, which warrants a

warning to Plaintiff that, in the event this action survives this motion to dismiss,

the case will be subject to dismissal under Rule 41(b) if such pattern of non-

compliance continues.  That warning is hereby given.

## RECOMMENDATION

It is **hereby recommended** that Defendants' Motion to Dismiss for failure

to arbitrate (Doc. No. 21) be **GRANTED** and this action be dismissed.

Alternatively, if this action is not dismissed for failure to arbitrate, then it is

recommended that it be dismissed on the merits for the reasons set forth in this

report.  Finally, if this action is not dismissed in entirely, the unserved defendants

should be dismissed for failure to accomplish service of process.


Date: October 26, 2015


                                        s/ Jeffrey J. Keyes
                                        JEFFREY J. KEYES
                                        United States Magistrate Judge



        Under Local Rule 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**November 10, 2015,** a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within **fourteen days** after service thereof.  All briefs filed
under this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.

        Unless the parties stipulate that the District Court is not required by 28
U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections
made to this Report and Recommendation, the party making the objections shall
timely order and file a complete transcript of the hearing within ten days of receipt
of the Report.